IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHANDRA RENA JACKSON ) 
o/b/o D.T.J., a minor, )
)
      Plaintiff, )
)
      v. )     CIVIL ACTION NO. 2:16-cv-1000-WC
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
      Defendant. )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Chandra Rena Jackson, on behalf of her minor daughter D.T.J., applied for child's supplemental security income ("SSI") under Title XVI of the Social Security Act. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found D.T.J. not disabled since the date the application was filed. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff then sought review of the Commissioner's decision in this court. In an Order entered on August 13, 2014, this

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to

court, the Honorable W. Keith Watkins, Chief United States District Judge, reversed the Commissioner's decision and remanded to the Commissioner for further proceedings. *See* Order (Doc. 27), *Jackson v. Colvin*, Civ. No. 2:13-cv-442-MEF (Aug. 13, 2014). On remand to the Commissioner, the ALJ conducted another administrative hearing and subsequently entered a written decision again finding D.T.J. not disabled. Plaintiff again sought review at the Appeals Council, which denied review, thereby making the ALJ's decision on remand the final decision of the Commissioner. Plaintiff has again sought review in this court under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 11); Def.'s Consent to Jurisdiction (Doc. 12). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 includes the standard for defining child disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The statute provides that an individual under age eighteen ("18") shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has

---

Social Security matters were transferred to the Commissioner of Social Security.

lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 1382c(a)(3)(C)(i) (1999).

The sequential analysis for determining whether a child claimant is disabled is as

follows:

> 1. If the claimant is engaged in substantial gainful activity, she is not disabled.

> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, she is not disabled.

> 3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, and Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997); *see also Shinn ex rel. Shinn v. Comm'r of Soc.*

*Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

> In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being. If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled. A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities. An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.

3

*Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 752 (11th Cir. 2011) (internal citations omitted).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal to, or functionally equivalent in severity to, a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether the ALJ's findings concerning the steps are supported by substantial evidence. "Under this limited standard of review, [the court] may not make fact-findings, re-weigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Where substantial evidence supporting the ALJ's fact findings exists, [the court] cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings." *Id*. (citing *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991)); *see also McMillian, o/b/o A.T.F. v. Comm'r of Soc. Sec.*, 521 F. App'x 801, 802 (11th Cir. 2013) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) ("'Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence.'").

## III.    ADMINISTRATIVE PROCEEDINGS

D.T.J. was sixteen years old at the time of the administrative hearing before the ALJ on remand. *See* Tr. 400. Following the hearing, the ALJ found at Step One that

D.T.J. had not engaged in substantial gainful activity at any time since the application date of June 23, 2010. Tr. 366. The ALJ found at Step Two that D.T.J. has the severe impairments of "asthma, chronic dermatitis, food allergy, and allergic rhinitis." *Id.* Next, the ALJ concluded under Step Three that these impairments do not meet or medically equal in severity the criteria for any impairment in the Listing of Impairments. Tr. 366-368. The ALJ further found that D.T.J.'s impairments do not functionally equal in severity any such listings because D.T.J. has either less than marked limitations or no limitations in each of the six domains of function. *Id.* at 368-89. Consequently, the ALJ found that D.T.J. was not disabled. Tr. 389.

## IV. PLAINTIFF'S CLAIMS

In her "Statement of the Issues," Plaintiff presents four issues for this court's consideration in review of the ALJ's decision: (1) "WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE CLAIM THAT D.T.J.'S IMPAIRMENTS MEET OR FUNCTIONALLY EQUAL THE CHILDHOOD LISTING OF IMPAIRMENTS;" (2) "WHETHER PROPER WEIGHT WAS GIVEN TO MEDICAL OPINIONS OF D.T.J.'S TREATING SOURCES;" (3) "WHETHER THE ALJ ERRED AS A MATTER OF LAW IN EVALUATING THE SEVERITY OF THE COMBINED EFFECT OF D.T.J.'S IMPAIRMENTS;" AND (4) "WHETHER THE ALJ WAS BIASED AND FAILED TO FOLLOW PROCEDURES." Doc. 16 at 1.

## V.    DISCUSSION

### A.  Whether substantial evidence supports the ALJ's decision that D.T.J.'s impairments do not meet or medically equal any of the listed impairments.[2]

Plaintiff first argues that there is "substantial evidence in the record supporting her claim" that D.T.J.'s impairments of asthma and dermatitis meet or medically equal in severity the Listings for those impairments. Doc. 16 at 6-7. In particular, as it pertains to the listing for dermatitis, Listing 108.05, she argues that "claimant suffers from dermatitis resulting in extensive skin lesions that persist for 3 months despite treatment." *Id.* at 7. In support of her contention, Plaintiff cites to numerous medical records spanning from as early as August 2003 through February 2012, with such records reflecting the numerous instances in which claimant received treatment for numerous conditions, including, *inter alia*, asthma, allergy-related conditions, respiratory infections, eczema, ringworm, and headaches. Doc. 7-9. Plaintiff then concludes, without any cogent analysis of the requirements of the Listings, that claimant "equals the Listing of Childhood Impairments at 103.03 Asthma and 108.05 Dermatitis. The substantial evidence in the record supports

---

[2]    Although Plaintiff references functional equivalence in the heading to her discussion of this issue, there is no argument in this discrete section of her brief about whether substantial evidence supports the ALJ's decision regarding functional equivalence. *See* Doc. 16 at 6-9. Indeed, she concludes this portion of her brief as follows: "D.T.J. equals the Listing of Childhood Impairments at 103.03 Asthma and 108.05 Dermatitis. The substantial evidence in the record supports her claim and proves that she has the medical equivalence of a listing level impairment SSR 17-2p." Doc. 16 at 9. In a separate portion of her brief Plaintiff challenges the ALJ's decision regarding functional equivalence. *See* Doc. 16 at 12-13. Thus, despite the wording of the heading given by Plaintiff, the court will here focus only on whether substantial evidence supports the ALJ's decision that D.T.J.'s impairments do not meet or medically equal one of the

her claim and proves that she has the medical equivalence of a listing level impairment SSR 17-2p." Doc. 16 at 9.

Plaintiff's argument in this regard suggests a fundamental misunderstanding of the standard of review in this court and, accordingly, is without merit. It is immaterial if, as Plaintiff argues, "[t]here is substantial evidence in the record supporting her claim" that claimant meets or equals one of the listings. Doc. 16 at 6. Rather, as discussed above, this court is only concerned with whether substantial evidence supports the Commissioner's decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Id.* (quoting *Hale v. Bowen*, 831 F.2d 1007, 1077 (11th Cir. 1987)). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). In other words, even if, as Plaintiff argues, there is substantial evidence in the record supporting her claim that claimant's impairments meet or medically equal a given Listing—indeed, even if the evidence preponderates in support of such a claim— this court must affirm the Commissioner's decision so long as it is supported by substantial evidence, meaning some quantum of evidence that is more than a scintilla but less than a preponderance. As will be shown below, the ALJ's decision in this regard is supported by substantial evidence.

---

listed impairments.

To the extent Plaintiff could somehow be perceived as arguing that the ALJ's decision is not supported by substantial evidence, her argument is plainly inadequate. Plaintiff only discusses numerous medical records showing that at various times claimant received treatment for a host of impairments, some related to her asthma or dermatitis, some not. Apart from her one assertion, unsupported by citation to any particular medical record, that claimant meets or medically equals the listing for dermatitis because of "extensive skin lesions that persist for 3 months despite treatment," Plaintiff makes no argument and cites to no medical records specifically in regard to the objective criteria for judging whether a claimant meets or medically equals the listing for dermatitis or asthma. Instead, Plaintiff apparently leaves it to the court to parse the medical record and determine whether claimant's impairments satisfy the criteria under either listing. This is inadequate to preserve and prosecute Plaintiff's argument. *See, e.g., Banks for Hunter v. Comm'r, Soc. Sec.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citing *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012)) ("A passing reference to an issue in a brief is insufficient and the failure to make arguments and cite authorities in support of an issue results in waiver.").

In any event, putting aside the inadequacy of Plaintiff's argument, this court must determine whether the ALJ's decision that claimant's impairments do not meet or medically equal one of the listed impairments is supported by substantial evidence. For the following reasons, the undersigned concludes that, indeed, the ALJ's decision is

supported by substantial evidence. The ALJ specifically considered whether Plaintiff's asthma and dermatitis meet or medically equal the listing corresponding with those impairments. As to asthma, which is covered by Listing 103.03, the ALJ correctly noted that, at the time of the ALJ's decision, the Listing required that the claimant have asthma and meet the additional requirements found in paragraphs A, B, C, or D of Listing 103.03. Tr. 367. The requirements of those paragraphs are summarized as follows: Paragraph A required an $FEV_1$ reading that is less than or equal to the value in a table provided in Listing 103.02;[3] Paragraph B required "attacks . . . in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year;" Paragraph C required "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with" either "[p]ersistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease" or "[s]hort courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;" and Paragraph D required "[g]rowth impairment."

While the ALJ found that Plaintiff has asthma, the ALJ further found that Plaintiff did not meet the requirements of any of the paragraphs described above. As to Paragraph

---

[3] According to the Listing, in spirometric testing $FEV_1$ is the "volume of air you exhale in the first second of" a forced exhalation following a forced maximum inhalation. Listing 103.00(E).

A, the ALJ found "there is no evidence that Claimant has ever undergone pulmonary function testing[,]" and, therefore, "the record cannot demonstrate a $FEV_1$ equal to or less than the value" provided in the table corresponding to claimant's age and height. Tr. 367. As to Paragraph B, the ALJ found that "there is no evidence of any prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting." Tr. 367. As to Paragraph C, the ALJ found that "there is no evidence documenting persistent low-grade wheezing between acute attacks (there is no evidence that Claimant has had attacks as defined in 3.00C) or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators." Tr. 367. Finally, as to Paragraph D, the ALJ found that "there is no evidence of growth impairment[.]" Tr. 367. In general, the ALJ noted that claimant's treatment for her asthma "has consisted of home medications" and, for the most part, has been conservative without any significant intervention or inpatient care in a hospital or emergency-room type setting. Tr. 368.

Plaintiff makes no argument in her brief that the ALJ's findings related to Paragraphs A-D are not supported by substantial evidence. Instead, as set forth above, she only alludes to medical records showing that claimant sometimes sought and received treatment for asthma, including various prescriptions. Doc. 16 at 7-9. While, in her reply brief, Plaintiff charges that the ALJ erred in finding "'no evidence that [claimant] has had

10

to take daytime and nocturnal bronchodilator,'" Doc. 22 at 2, she only asserts that claimant was, in fact, prescribed bronchodilators to treat her asthma. Of course, the ALJ noted the fact that claimant had been prescribed bronchodilators (Tr. 368, 371-73), but the ALJ is correct that there is no evidence that claimant was prescribed a "nocturnal" bronchodilator. Plaintiff certainly does not point to any specific instance in which such was prescribed, much less used by claimant. In any event, the ALJ's findings with respect to whether claimant's asthma meets or medically equals in severity the listing for asthma are supported by substantial evidence and Plaintiff has therefore failed to show any error by the ALJ.

The ALJ also concluded that claimant does not meet or medically equal the listing for dermatitis. Tr. 368. The ALJ correctly noted that the listing for dermatitis, Listing 108.05, requires, in addition to a diagnosis of a skin condition like "psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, or allergic contact dermatitis," "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." Tr. 368. Importantly, "extensive skin lesions" are "those that involve multiple body sites or critical body areas, and result in a very serious limitation." Listing 108.00(C)(1). Examples of skin lesions causing a "very serious limitation" include those that "interfere with the motion of your joints and that very seriously limit your use of more than one extremity," those located "on the palms of both hands that very seriously limit your ability to do fine and gross motor movements," and those "on the soles of both feet, the

perineum, and both inguinal areas that very seriously limit your ability to ambulate. *Id.* The ALJ found that, while "doctors have described Claimant's eczema as severe at times," "the evidence does not document extensive skin lesions that have persisted for at least 3 months despite continuing treatment as prescribed." *Id.* The ALJ's finding in this regard was predicated upon a detailed longitudinal examination of the medical record. *See* Tr. 371-74.

Despite asserting that "claimant suffers from dermatitis resulting in extensive skin lesions that persist for 3 months despite treatment," Doc. 16 at 7, Plaintiff points to no evidence specifically showing that, in fact, claimant has suffered from "extensive" skin lesions that persist for at least three months despite her prescribed treatment. Instead, once again, Plaintiff only offers a cursory summary of the evidence showing that claimant received treatment over a number of years for her skin-related conditions and other maladies. Doc. 16 at 7-9. While these records undoubtedly show that from time-to-time claimant presented with eczema or other dermatological symptoms and received generally conservative treatments for them, Plaintiff points to nothing in the record showing, specifically, that claimant ever suffered from "extensive skin lesions" that caused the sorts of limitations described in the Listing. That is, Plaintiff points to no evidence showing that any lesions affected the movement or use of claimant's limbs, or her ability to perform fine or gross manipulations, or her ability to ambulate. Furthermore, even if Plaintiff had produced evidence tending to show the existence of

"extensive skin lesions" causing these types of serious limitations, Plaintiff points to no evidence showing that such lesions, and accompanying serious limitations, persisted for at least three months despite her compliance with prescribed treatments. As such, Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence.

**B.    The ALJ's consideration of claimant's treating sources.**

Plaintiff next appears to argue that the ALJ failed to properly credit the opinions of claimant's treating sources. However, Plaintiff's argument in this regard lacks coherence. Plaintiff first appears to argue that the ALJ "played judge and doctor" because the ALJ isolated aspects of Plaintiff's testimony about improvements in claimant's dermatological conditions at the hearing to support the ALJ's ruling without properly contextualizing the testimony. Doc. 16 at 10. Plaintiff then alludes to claimant's treating source's statement, in 2006, that claimant may have "childhood migraines." *Id.* Plaintiff next appears to argue that the ALJ improperly credited the opinion of a non-examining state agency medical source over the testimony of a non-examining medical expert who testified at the hearing with regard to the question of functional equivalence. *Id.* at 11. Of course, neither of these two physicians were a treating source for claimant. Plaintiff next alludes to a few instances in which her treating physician, Dr. Williams, noted claimant's history of asthma and eczema and further noted medications she had been prescribed for those conditions. *Id.* Finally,

Plaintiff confusingly appears to argue that the ALJ failed to "resolve any conflict in order to properly develop the claim prior to rendering a decision." *Id.*

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical opinions provided by treating sources are especially significant in the ALJ's RFC assessment. Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Here, despite all of Plaintiff's stray, disparate observations and arguments, Plaintiff fails to actually point to any treating source opinion worthy of greater weight which, it is argued, the ALJ improperly failed to credit. While Plaintiff no doubt points

to records showing that claimant was diagnosed and treated for various conditions, it cannot be said that the ALJ improperly rejected such evidence. In fact, the ALJ properly recognized the numerous instances in which claimant was diagnosed and treated for her conditions and, indeed, found several of claimant's conditions to be severe impairments. Tr. 371-74. Thus, it cannot be fairly argued that the ALJ rejected any specific treating source opinion about the severity of claimant's impairments because the record only reflects occasional diagnoses and mostly conservative treatments of claimant's impairments. In other words, there is no specific treating source opinion in the record reflecting a judgment that claimant's impairments are more severe than found by the ALJ.

In particular, while Plaintiff appears to argue that the ALJ substituted her own opinion about the severity of claimant's headaches for that of claimant's treating physician, *see* Doc. 16 at 10, the record reflects only that the treating source once opined that claimant "may possibly have childhood migraine[s] because the headaches tend to throb and bright lights and noises tend to bother her." Tr. 256. The ALJ recognized the treating source's observation. Tr. 371. However, this lone treating source observation highlighted by Plaintiff cannot fairly be deemed a treating source opinion about the severity of claimant's headaches that is entitled to significant weight. It is not even a diagnosis of childhood migraines. Rather, it is the treating source's speculation—based upon the subjective reports given to the physician on that day—that claimant might suffer

from migraines but, even to that extent, it is qualified by the physician's observation that "[o]f course, we are at the beginning of the school [year] and the stress is probably at [a] fairly high level in this little girl right now." Tr. 256. In any event, Plaintiff points to no other instance in the record where this or any other treating source specifically diagnosed and opined about the severity of any headaches claimant experiences. As such, Plaintiff's contention that the ALJ improperly rejected any treating source opinion about the severity of claimant's impairments is without merit.

### C. The ALJ's decision regarding functional equivalence.

Plaintiff next argues that the "ALJ erred in evaluating the severity of the combined effect of" claimant's impairments. Doc. 16 at 12. After summarizing the test for finding functional equivalence under the listings, Plaintiff argues that the "cumulative effects of [claimant's] impairment[s] limit several activities." *Id.* Plaintiff then identifies a number of limitations experienced by claimant, including the following: claimant "has trouble . . . sleeping [and] being outside in the heat; her food allergies prevent her from eating certain foods; strong smells cause her to cough; she cannot use strong household cleaning products;" her "itchy skin causes her to scratch which results in pain;" she tries to hide her skin lesions and scars by wearing long sleeves and pants; she cannot wear makeup; one of her medications causes a "painful burning sensation when applied," her "scalp is so sensitive that she does not use color or straightening products on her hair;" she has experienced hair loss; "[s]he has trouble interacting and relating with others because the

other children make fun of her;" and she has had behavior issues at school "due to teasing and bullying due to her appearance." *Id.* at 12-13. From this litany of circumstances, Plaintiff concludes this portion of her brief by simply asserting that claimant "has marked limitations of function in the domains of Interacting and Relating With Others and in the domain of Caring for Self and Physical Well-Being[.]" *Id.* at 13. No additional argument, or citations to authority, is provided.

Although Plaintiff fails to specifically describe the error she contends was committed by the ALJ in the functional equivalency analysis, it appears Plaintiff is attempting to argue that the ALJ's functional equivalence finding is not supported by substantial evidence. As Plaintiff expressly limits any argument that can be gleaned or implied from her brief to the ALJ's findings with respect to the functional domains of Interacting and Relating With Others, Caring for Yourself, and Health and Physical Well-Being, the court will examine only those portions of the ALJ's opinion. In the relevant portion of her opinion, the ALJ summarized Plaintiff's subjective description of the severity of claimant's impairments (Tr. 369-70) before reviewing, in significant detail, the medical evidence in the record. Tr. 371-74. Based upon this review of the evidence, the ALJ found, in relevant part, that claimant has a less than marked limitation in interacting and relating with others, no limitation in the ability to care for herself, and a less than marked limitation in health and physical well-being. Tr. 380-89. The court will examine whether each finding is supported by substantial evidence.

In general, in evaluating whether a child's impairments are functionally equivalent to the Listings, the ALJ is to consider the "whole child" and determine what he or she cannot do, or has difficulty doing, because of his impairments. 20 C.F.R. § 416.926a(a). The ALJ must consider all relevant information available in the record, including the medical evidence and statements from parents, teachers, other school personnel, and the like. 20 C.F.R. § 416.924a(a). The ALJ must compare the child's functioning to that of other children the claimant's age who are not burdened by such impairments. 20 C.F.R. § 414.924a(b)(3). The ALJ must assess the interactive and cumulative effects of the child's severe and less than severe impairments, 20 C.F.R. §§ 416.924a(b)(4), 416.926a(a), and must also consider the child's abilities to "initiate, sustain, and complete" activities, "the amount of help or adaptations" needed by the child, and "the effects of structured or supportive settings." 20 C.F.R. § 416.924a(b)(5). The ALJ must find that a child has "marked" limitation in a domain when his or her impairment or combination of impairments interferes seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme," and may be found where any one activity or function described in the regulations is limited, or when several such activities or functions are limited by the impairment(s). *Id.*

### 1.    Interacting and Relating with Others.

With respect to the functional domain of interacting and relating with others, the ALJ correctly noted that this domain is concerned with "how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." Tr. 380. *See* 20 C.F.R. 416.926a(i). The ALJ further correctly set out the regulations' definitions for interacting and relating with others, and the standards of functioning for children without impairments. Tr. 380-81. The ALJ reviewed statements submitted by claimant's mother and her teachers, as well as other school records, and a consultative psychological examination performed by Dr. Kale Kirkland. Doc. 381-82. In finding a less than marked limitation in this functional domain, the ALJ remarked as follows:

> In sum, the record shows that claimant has had some behavioral problems at school. According to her mother Chandra Jackson, her misbehavior is the result of other students making fun of her skin condition. Her teachers, on the other hand, report that claimant is disrespectful to both students and adults. While school records do show that claimant has received several out-of-school and in-school suspensions (ISSP), it is unclear under what circumstances these disciplinary actions occurred. What is clear, however, is that the record contains no involvement with the police or juvenile authorities. For treatment records through 2015, there are no complaints of behavior problems and no evidence of any inpatient psychiatric hospitalizations or regular outpatient mental health counseling for behavioral or emotional problems. School records show that despite some classroom behavioral problems, the claimant has kept up with her classmates, academically, and participated in group activities, such as playing in the band and team sports at school. She has attended church where she has served as an usher and a member of the youth choir (Testimony).

19

Tr. 382 (citations omitted).  Indeed, as found by the ALJ, the record indicates that claimant has had some behavioral issues at school, and that she does not always get along with her peers.  Plaintiff largely seems to indicate that these issues are related to, rather than caused by, claimant's eczema.  In other words, while claimant's eczema or other impairments do not, on their own, cause her to misbehave or fail to get along with others, she struggles with teasing and bullying that supposedly is based upon such conditions. *See, e.g.,* Tr. 409 (Plaintiff explaining that claimant is "picked on at school," and when teachers fail to address such behavior, claimant might "respond back to something one of the kids say to her, and it gets her in trouble too.").

Plaintiff points to no authority demonstrating that limitations or issues caused not by a given impairment but, instead, flowing from others' reactions to the impairment can somehow satisfy the standard for functional equivalence.  Indeed, the regulations specify that the Commissioner is to "assess the functional limitations **caused** by your impairment(s): *i.e.*, what you cannot do, have difficult doing, need help doing, or are restricted from doing **because of** your impairment(s)."  20 C.F.R. § 416.926a(a) (emphasis supplied).  Where it cannot be said that claimant's eczema, or any other impairment, actively causes her to misbehave or have difficulty getting along with others, then it is not clear to the undersigned that the standard for functional equivalence set forth in the regulations can be satisfied.

In any event, even if Plaintiff's theory that claimant's behavioral issues related to the eczema-related teasing and bullying she endures is viable, it does not follow that the ALJ's decision finding that claimant is less than markedly impaired in this functional domain is not supported by substantial evidence. Indeed, for the following reasons, it is supported by substantial evidence. First, the ALJ correctly noted that many of the school records indicating that claimant was disciplined by, for instance, being placed in in-school suspension, do not explain the circumstances of the incidents leading to the discipline imposed. Likewise, other records, including the teacher questionnaires in the record, do not necessarily indicate "marked" limitations in claimant's ability to interact or relate with others. For example, claimant's fifth grade Social Studies teacher noted a more than "slight" problem only in claimant's ability to make and keep friends, express anger appropriately, respect or obey adults in authority, and interpret the meaning of facial expressions, body language, hints, and sarcasm. Tr. 192. Otherwise, the teacher noted only "slight" or no problems in a multitude of functional areas within this domain, including playing cooperatively with other children, seeking attention appropriately, asking permission appropriately, following rules, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in conversation, and using adequate vocabulary and grammar to express thoughts or ideas in general conversation. Tr. 192. Importantly, the teacher indicated that she can understand "almost all" of

claimant's speech on the first attempt regardless of whether the topic of conversation is known. Tr. 193. Furthermore, the teacher indicated that she has not heard other children making fun of claimant, and that she got along well with claimant. Tr. 195-96. Similarly, claimant's math and science teacher found more than a "slight" problem only with claimant's ability to seek attention appropriately, express anger appropriately, follow rules, and respect or obey adults in authority. Otherwise, the teacher found claimant to have only a slight, or no, problem in the functional areas relating to this domain, including playing with other children, making and keeping friends, asking permission appropriately, using appropriate language, maintaining conversations, and using adequate vocabulary to ordinary conversation. Tr. 209. This teacher also indicated that claimant's speech is fully understandable without the need for repetition. Tr. 210. Hence, while available school records and statements from claimant's teachers suggest some behavioral problems, as the ALJ found, they are not necessarily indicative of a marked limitation in claimant's ability to interact and relate with others.

Apart from those records, the ALJ considered Dr. Kirkland's consultative psychological evaluation, in which Dr. Kirkland, who performed his evaluation after the teacher questionnaires discussed above, ultimately concluded that claimant "is psychologically stable at this time and does not need any kind of mental health treatment." Tr. 310. In reaching this determination, Dr. Kirkland observed that claimant "has no problems with sleep or appetite and is generally a happy person." Tr. 309. Her

mental status examination was normal, and she had no trouble relating with Dr. Kirkland, answering his questions, or relaying information. Tr. 309. Dr. Kirkland further relayed claimant's report of her daily activities: "This patient enjoys playing outside, playing with cousins, going shopping, watching television, and playing on the computer. She helps out around the house by washing dishes, washing clothes, and cleaning." Tr. 310. In other words, nothing in Dr. Kirkland's evaluation suggested any marked limitation in claimant's ability to interact and relate with others.

Against all of this evidence, the ALJ had only the subjective testimony of Plaintiff and a few school records indicating occasional disciplinary problems, but without much context. As to the latter, the ALJ properly determined that the lack of context precluded much in the way of probative weight being given to the disciplinary records. Tr. 382. As to the former, the testimony of claimant's mother, the ALJ determined that such testimony was only entitled to some deference. Tr. 383. Importantly, and relatedly, the ALJ had previously observed that claimant's "mother appears to engage in considerable hyperbole and embellishment of claimant's symptoms." Tr. 370. The ALJ gave concrete examples of perceived hyperbole embellishment that caused her to find Plaintiff less than fully credible in her description of claimant's symptoms. Tr. 370-71; 374. Notably, Plaintiff has not challenged the ALJ's findings as to her credibility.

In sum, substantial evidence supports the ALJ's decision that claimant has a less than marked limitation in her ability to interact and relate with others. Although Plaintiff

summarily asserts that claimant has marked limitations in that functional domain, the only evidence Plaintiff proffers in support of that contention is that "other children make fun" of claimant, which causes "behavioral issues at school due to this teasing and bullying due to her appearance." Doc. 16 at 13. However, for the reasons stated by the ALJ and discussed above, evidence of such teasing and bullying and related disciplinary issues does not diminish the substantial evidence in the record indicating that claimant's ability to interact and relate with others is not markedly impaired.

### 2.    Caring for Yourself.

Plaintiff asserts that claimant has a marked limitation "in the domain of Caring for Self and Physical Well-Being." Doc. 13 at 15. Although this appears to be a conflation by Plaintiff of the final two domains, Caring for Yourself and Health and Physical Well-Being, the court assumes that Plaintiff intends to argue that claimant has marked limitations in both domains. As to the functional domain "Caring for Yourself," the ALJ found that claimant has no limitation. Tr. 385. In reaching this determination, the ALJ correctly observed that this domain concerns how well the claimant "maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways[,]" including "how the child copes with stress and changes in the environment and how well the child takes care of her own health, possessions, and living area." Tr. 384; *see* 20 C.F.R. § 416.926a(k). In reviewing the evidence, the ALJ noted Plaintiff's representation, on a Function Report that she

completed, that claimant's impairments cause limitations to her ability to care for herself. Tr. 385. However, the only problems in this domain identified by Plaintiff are that claimant does not do what she is told most of the time and does not accept criticism or correction. Tr. 385 (citing Tr. 167). Beyond Plaintiff's own representations, the ALJ again noted the teacher questionnaires discussed previously. One teacher observed no problems in the many functions comprising claimant's ability to care for herself, Tr. 194, while the other teacher observed a more than "slight" problem in only one functional area, "handling frustration appropriately." Tr. 211. Finally, the ALJ gave "great weight" to the opinion of the state agency medical consultant's opinion that claimant has no limitation in this domain. Tr. 383 (citing Tr. 293). All of the above constitutes substantial evidence in support of the ALJ's decision that claimant has no impairment, or, at least, less than a marked impairment, in her ability to care for herself.

Perhaps because it is not even clear that Plaintiff intended to argue that claimant is markedly impaired in this functional domain, Plaintiff's brief does not point to any evidence in the record tending to substantiate such a contention. None of Plaintiff's anecdotal observations in her brief—that claimant has trouble sleeping, suffers from food allergies, is sensitive to cleaning products, scratches her skin excessively, wears long clothing to hide her lesions, does not use certain hair products, endures teasing and bullying due to her skin condition, and is not allowed to play basketball—appear targeted to the criteria set forth for this domain in the regulations. *See* 20 C.F.R. §

416.926a(k)(1)(i)-(iv).  As such, given that the ALJ's finding is otherwise supported by substantial evidence in the record, the undersigned concludes that claimant's charge of error, if indeed any such charge was intended to be lodged, is without merit.

### 3.    Health and Physical Well-Being.

The final functional domain for which Plaintiff arguably asserts that claimant is markedly limited is the domain of health and physical well-being.  The ALJ correctly noted that this domain "considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's mental health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects."  Tr. 386; *see* 20 C.F.R. § 4160926a(l).  The ALJ ultimately concluded that claimant has a less than marked limitation in health and physical well-being.  Tr. 383.  The ALJ based this conclusion on a review of relevant evidence, including Plaintiff's statements and testimony, school records showing the number of absences incurred by claimant during 2010-2011, the teacher questionnaires discussed previously, the opinion of the state agency medical consultant, and medical records reflecting claimant's treatment for asthma, allergies, and eczema.  Tr. 386-89.

Plaintiff only argues that claimant has a marked limitation in this domain.  Doc. 16 at 13.  Indeed, much of the anecdotal circumstances she points to in her brief would appear to fall under the rubric of this domain.  That is, Plaintiff's generalized claims that claimant has difficulty sleeping, cannot eat certain foods, is pained by her eczema

medications, experiences hair loss and the like most naturally relate to this functional domain. And, as the ALJ noted repeatedly, there is no doubt that claimant suffers from serious impairments that cause some limitations in her functioning. *See, e.g.*, Tr. 375. However, even if the ALJ's decision that claimant is less than markedly limited in this domain is not supported by substantial evidence—and the undersigned does not conclude that it is—reversal of the ALJ's decision is not warranted because Plaintiff has not shown that the ALJ's decision that claimant lacks marked limitations in any other domain is not supported by substantial evidence. As such, even if claimant is markedly limited in this domain, a finding of functional equivalence is not warranted because a claimant must be markedly limited in two domains, or extremely limited in one, in order to support a finding of functional equivalence. 20 C.F.R. § 416.926a(d). Where, at most, Plaintiff may establish ALJ error with respect to her less than marked determination in only one domain, and the ALJ did not find marked limitations in any other domain, then any error with respect to the ALJ's decision is harmless and does not warrant reversal. *See, e.g., J.B. ex rel. Barboza v. Astrue*, 738 F. Supp. 2d 260, 265 (D. Mass. 2010) ("Finally, even if the ALJ erred in determining that J.B. did not suffer marked limitations in the domain of health and physical well-being, his error was harmless unless plaintiff can show that J.B. suffered marked limitations in another domain as well."). Thus, assuming, without finding, that the ALJ's decision with respect to this domain is not supported by substantial evidence, Plaintiff is not entitled to reversal of the ALJ's decision because

Plaintiff has failed to show that the ALJ's decision that claimant is less than markedly limited in all other functional domains is supported by substantial evidence.

### D.     The ALJ's alleged bias and failure to follow procedures.

Plaintiff's final charge of error is that the "ALJ was biased."  Doc. 16 at 13. Plaintiff perceives such bias, apparently, from the ALJ's discussion of whether Plaintiff followed-through on a physician referral for claimant to see a dermatological specialist. In her opinion, the ALJ concluded that Plaintiff's apparent failure to take claimant to the specialist, coupled with the fact that "claimant no longer uses prescription medicated creams for her skin condition, but buys over-the-counter lotions and creams" suggests that claimant's skin condition "has significantly improved" and that it does not support Plaintiff's testimony about the severity of claimant's skin conditions.   Tr. 388. According to Plaintiff, because she testified that she was unable to afford taking claimant to see the specialist, the ALJ's supposed reliance on Plaintiff's noncompliance to deny benefits "showed bias on the part of the trier of fact and is reversible error."  Doc. 16 at 14.

Plaintiff's claim is without merit.  First, as to purported bias, Plaintiff has failed to show that the ALJ was biased against her.  While Plaintiff appears to argue that the ALJ legally erred with respect to her consideration of Plaintiff's noncompliance with prescribed treatment, Plaintiff points to nothing in the record substantiating any claim that the ALJ was actually biased against her.  Plaintiff does not point to any statement,

comment, or non-verbal action demonstrating any form of hostility, antagonism, preference for the Commissioner's position, or other predisposition against Plaintiff. As such, she has failed to substantiate any claim of actionable bias on the part of the ALJ. *See, e.g., Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 794 (11th Cir. 2016) (finding that the plaintiff failed to show bias on the part of the ALJ where ALJ allegedly made rude remarks and raised his voice in response to "'reasonable and polite statements'" made by plaintiff's counsel because the "ALJ's comments were at most expressions of impatience and dissatisfaction with statements" by counsel and, therefore, were not "sufficient to establish bias or partiality").

As to Plaintiff's embedded claim of legal error in the ALJ's discussion of Plaintiff's noncompliance, the court finds no reversible error. As mentioned above, in essence, the ALJ relied upon Plaintiff's failure to follow-through on a specialist referral to conclude that Plaintiff's testimony about the severity of claimant's impairments was only partially credible. Tr. 388. As such, the ALJ did not find that claimant is not disabled because of her purported noncompliance. Insofar as the ALJ did partially base her credibility determination on the alleged noncompliance, Plaintiff has failed to show any error. Plaintiff, who lives in Greenville, Alabama (Tr. 400), testified that she did not bring her daughter to see a physician in Montgomery because "Medicaid doesn't pay for it so I haven't really been able to get her to him." Tr. 404-05. Although Plaintiff further testified that her "transportation" would not allow her to take her daughter to

Birmingham for treatment (Tr. 405), it is noteworthy that the physician to whom claimant was referred was located in Montgomery and that Plaintiff was in fact able to travel to Montgomery for the hearing before the ALJ.[4]  In any event, the ALJ did not find claimant not disabled because of alleged noncompliance.  As discussed above, the ALJ based that conclusion on the entire body of evidence showing that claimant, while suffering severe impairments, does not have an impairment that meets, medically equals, or functionally equals one of the listed impairments.  With regard to the alleged noncompliance highlighted by Plaintiff, the ALJ only observed, correctly, that the referring physician's records indicated that Medicaid was claimant's insurer and that the referring physician's office had utilized Medicaid to obtain payment for its treatment of claimant.  *See* Tr. 748. Although Plaintiff apparently takes umbrage with the ALJ's speculation that Medicaid likely would have covered the referral physician's treatment of claimant, she points to nothing showing that the ALJ improperly relied upon these records merely in assessing Plaintiff's credibility.  Accordingly, Plaintiff has failed to show any bias on the part of the ALJ and, moreover, has failed to show that the ALJ committed reversible error with respect to her consideration of Plaintiff's purported noncompliance.

---

[4]  Plaintiff and claimant also traveled to Montgomery for the consultative psychological

## VI.     CONCLUSION

The court has carefully and independently reviewed the record and concludes that,

for the reasons given above, the decision of the Commissioner is AFFIRMED.     A

separate judgment will issue.

Done this 10th day of August, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE